FRED J. GRIBBLE AND WIFE, DESSIE J. GRIBBLE v. CLOYCE GRIBBLE

No. 7430SC867

(Filed 16 April 1975)

1. Fraud § 3— unfulfilled promise — no intent to perform

In general, an unfulfilled promise will not support an action for fraud; if, however, at the time the promise is made the promisor has

Gribble v. Gribble

no intention to perform and the promisee reasonably relies on the promise to act to his injury, the promise may constitute a misrepresentation of a material fact such as to support an action for fraud since the state of mind of the promisor is a subsisting fact which has been falsely represented.

2. **Evidence § 11— dead man's statute — action against surviving tenant by entirety**

A surviving tenant by the entirety is the "survivor of a deceased person" within the meaning of G.S. 8-51 in an action which attacks the validity of the deed by which the tenancy by the entirety was created; therefore, G.S. 8-51 applied to exclude testimony by male plaintiff concerning any personal transactions or communications between him and defendant's deceased husband in plaintiffs' action to rescind a deed to defendant and her deceased husband based on allegedly fraudulent representations by decedent that he would build a house on the property, reside there with his family, and help take care of plaintiffs.

3. **Evidence § 11— dead man's statute — communications with deceased agent**

In a breach of contract action in which plaintiffs contended that defendant's deceased husband acted for himself and as agent for defendant in promising to build a house on land conveyed to defendant and her husband, to reside on the land and to render assistance to plaintiffs, G.S. 8-51 applied to exclude testimony by plaintiffs concerning personal transactions between them and the deceased agent since plaintiffs' claim was based upon a theory that defendant's deceased husband was personally liable in respect of the alleged cause of action.

4. **Cancellation and Rescission of Instruments § 10— promise to build on land and take care of plaintiffs — insufficiency of evidence**

Defendant's motion for directed verdict was properly allowed in an action to set aside a deed to defendant and her deceased husband and for breach of contract based on alleged false representations by defendant's husband that he would build a house on the property and that he and his family would reside on the land and render assistance to plaintiffs where the evidence tended to show only that on occasions after plaintiffs executed the deed, defendant's husband, who was plaintiffs' nephew, stated that he intended to build a home on the property and to move on the property and take care of plaintiffs.

5. **Fiduciaries; Cancellation and Rescission of Instruments § 2— family relationship — no presumption of fraud**

A family relationship does not raise a presumption of fraud or undue influence.

APPEAL by plaintiffs from *Copeland, Judge.* Judgment entered 25 June 1974 in Superior Court, CLAY County. Heard in the Court of Appeals 15 January 1975.

Civil action to rescind a deed or alternatively to recover damages.

In October 1966 plaintiffs, reserving life estates, conveyed the remainder interest in their 352-acre homeplace in Clay County to defendant and her husband, Perry E. Gribble. Perry, who was plaintiff Fred J. Gribble's nephew, died in July 1971. This action was commenced 1 March 1973 against defendant as the surviving tenant by the entirety to set aside the deed or in the alternative to recover damages.

In their complaint, plaintiffs alleged: Early in 1966 they received offers of $27,000.00 and $36,000.00 from persons who wanted to buy their property. They sought advice from nephew Perry, who then lived in Maryland, where he was engaged in the real estate business. Perry advised that the offered prices were too low and requested that they cease negotiations for a sale until he could come to North Carolina to discuss the matter. Perry made several trips to visit plaintiffs and told them he wanted to move back to North Carolina and to purchase the property himself but that he was unable to pay the full market value. Perry told plaintiffs that if they would sell the property to him at a bargain figure, he would then have sufficient funds to build a residence on the property for himself and his family where they would live and be available to give assistance to plaintiffs should this be required. He also advised plaintiffs that they should reserve life estates in the property. Plaintiffs were attracted to this offer because of their desire to have a family member nearby to care for them in their advanced years. Because of Perry's "continued promises that he and his family intended to permanently reside on the property and to be available to plaintiffs in event of their need, plaintiffs finally succumbed to the offers and representations," and agreed to convey the property to Perry and the defendant.

Perry and defendant paid nothing down for the property but executed a note and deed of trust in the amount of $15,000.00 payable in 15 equal annual installments of $1,000.00 each without interest, the first payment being due on 10 January 1967. They paid the annual installments which fell due on 10 January 1967, 1968, 1969 and 1970 and received a further credit of $2,000.00 by reason of transfer of some cattle, making total payments of $6,000.00. Perry did move his family to Clay County and rented a residence until construction of the home which they promised plaintiffs they would build on the property could be completed. Perry employed a contractor, who excavated a houseplace, put in roads, and prepared the site for building.

Perry also made arrangements for telephone and electric service. Plaintiffs alleged that Perry and defendant had no real intention of actually constructing a home, either at the time of their negotiations with plaintiffs or thereafter, that all of the preliminary construction work was done solely for the purpose of misleading plaintiffs, and that on 21 June 1971 Perry and defendant purchased a home in Hayesville and thereafter discontinued all pretense of building.

Plaintiffs, alleging that the deed had been obtained from them by the fraudulent misrepresentations of Perry and defendant concerning their true intentions as to building a house on the property, offered to refund the $6,000.00 with interest and asked that their deed be declared void, or, in the alternative, that they recover of defendant damages in the amount by which the fair market value of the property in 1966 exceeded $15,000.00.

Defendant filed answer in which she denied that she had made any promises whatever to plaintiffs and denied that the deed had been executed as a result of any promises or persuasions of the defendant or of her deceased husband.

At the trial, the court excluded the testimony of plaintiff Fred Gribble as to his conversations and negotiations with his deceased nephew. At the close of plaintiffs' evidence the court allowed defendant's motion for a directed verdict, and from judgment dismissing the action, plaintiffs appealed.

*Jones, Jones & Key, P.A. by R. S. Jones, Jr., for plaintiff appellants.*

*Leonard W. Lloyd for defendant appellee.*

PARKER, Judge.

[1]  In general, an unfulfilled promise will not support an action for fraud. If, however, at the time the promise is made the promisor has no intention to perform and the promisee reasonably relies on the promise to act to his injury, the promise may constitute a misrepresentation of a material fact such as to support an action for fraud. This is so because the state of mind of the promisor is a subsisting fact which has been falsely represented. *Gadsden v. Johnson*, 261 N.C. 743, 136 S.E. 2d 74 (1964) ; *Davis v. Davis*, 236 N.C. 208, 72 S.E. 2d 414 (1952). Plaintiffs here have alleged such a case. The question is whether they have supported their allegations with competent evidence.

No evidence was offered to show that defendant herself made any promise or representation whatever, and, apart from the tendered but excluded testimony of plaintiff Fred Gribble concerning conversations with defendant's deceased husband, there was no evidence to show that at the time plaintiffs executed their deed, defendant's husband fraudulently misrepresented his intention as to building a house and residing upon the property. Thus, the question presented by this appeal becomes narrowed to whether plaintiff Fred Gribble's testimony was properly excluded. We hold that it was.

[2] Insofar as pertinent to this appeal, G.S. 8-51 provides that "[u]pon the trial of an action . . . a party . . . shall not be examined as a witness in his own behalf or interest . . . against the executor, administrator or survivor of a deceased person . . . or a person deriving his title or interest from, through or under a deceased person . . . by assignment or otherwise, concerning a personal transaction or communication between the witness and the deceased person. . . . " The estate of defendant's deceased husband is not a party to this action, and this action is not against the executor or administrator of a deceased person. Nor does defendant derive her title "from, through or under" her deceased husband; her title comes directly from plaintiffs. She is, however, a surviving tenant by the entirety and we hold that as such she is the "survivor of a deceased person" within the meaning of G.S. 8-51 in an action, such as the present one, which attacks the validity of the deed by which the tenancy by the entirety was created. We hold, therefore, that G.S. 8-51 applied and operated to exclude testimony by plaintiff Fred Gribble concerning any personal transactions or communications between him and defendant's deceased husband in plaintiffs' equitable action to rescind the deed for fraud.

[3] Plaintiffs' alternative claim for relief to recover damages for breach of contract rests upon their allegations that defendant and her husband contracted with plaintiffs to build a house, reside on the land, and render assistance to plaintiffs, that they failed to perform these agreements, and that plaintiffs are entitled to recover damages resulting from the breach. As above noted, there was no evidence that defendant herself promised anything or made any agreement with plaintiffs other than as contained in the $15,000.00 purchase money note and deed of trust which she signed. Plaintiffs alleged that defendant "was well aware of the negotiations, promises and persuasions made

Gribble v. Gribble

by Perry E. Gribble on behalf of himself and his wife to plaintiffs," and apparently plaintiffs hoped to recover from defendant on the theory that her deceased husband acted not only for himself but as agent for her. If so, G.S. 8-51 still operates to exclude testimony by plaintiffs concerning any personal transactions or communications between them and the deceased agent. Although our Supreme Court has held that G.S. 8-51 does not render an interested witness incompetent to testify to a transaction between himself and a deceased agent of his opponent, "this rule has been applied only in factual situations where the deceased agent was not personally liable in respect of the alleged cause of action." *Tharpe v. Newman,* 257 N.C. 71, 76, 125 S.E. 2d 315, 319 (1962). Here, plaintiffs' claim for damages for breach of contract was based entirely upon the theory that defendant's deceased husband, allegedly her agent, was personally liable in respect to the alleged cause of action.

We hold, therefore, that G.S. 8-51 was applicable both to plaintiffs' alleged claim for damages for breach of contract as well as to their claim for rescission of the deed for fraud. Examination of the record discloses that the trial judge correctly applied the statute in each instance in which objections by defendant's counsel to questions directed to plaintiff Fred Gribble were sustained, and plaintiffs' assignments of error directed to application of the statute are overruled.

[4, 5]   We also find that defendant's motion for a directed verdict was properly allowed. The testimony of independent witnesses that on various occasions after plaintiffs had executed the deed to Perry Gribble and the defendant, Perry had stated that he intended to build a home on the property and "was going to move up there to where he could be handy to help Fred out" and that he was going to "take care of Uncle Fred and Aunt Dessie," falls short of showing a binding contract to do so. Furthermore, the evidence shows a family relationship, not a fiduciary one, and a family relationship does not raise a presumption of fraud or undue influence. *Davis v. Davis, supra; Cornatzer v. Nicks,* 14 N.C. App. 152, 187 S.E. 2d 385 (1972), *cert. denied,* 281 N.C. 154, 188 S.E. 2d 365 (1972).

The judgment appealed from is

Affirmed.

Judges MORRIS and HEDRICK concur.